STATE OF MINNESOTA                                          DISTRICT COURT

COUNTY OF MINNESOTA                             FOURTH JUDICIAL DISTRICT

                                                              CASE TYPE- Civil Rights

---

Hillary Richard,                                   Court File  No. _____

        Plaintiff,

                                     **COMPLAINT**

v.

                                     **DEMAND FOR JURY TRIAL**

Minneapolis Police Officer Oscar Macias
(Badge #4319), *in his individual and
official capacity*; City of Minneapolis, a
municipal entity,

        Defendants.

---

        Plaintiff Hillary Richard (she/her, hereinafter "Plaintiff"), by and through her

attorney, for her Complaint against Defendants, upon personal knowledge as to her own

facts and conduct, and on information and belief as to all other matters, states and alleges

as follows:

## INTRODUCTION

1.     This is an action under 42 U.S.C. § 1983 for monetary damages for injuries

       sustained by Plaintiff as a result of the unreasonable use of excessive force on May

       28, 2020, in addition to other violations of her constitutional rights by Defendant

       Minneapolis Police Officer Oscar Macias (hereinafter "Defendant Macias"), in

pursuance of orders and policies set by higher level government officials and government entities.

2.   The conduct of Defendant Macias grossly violated Plaintiff's clearly established federal civil rights, all while acting under the color of state law, and while carrying out polices and customs of his police department, other government agencies working with the Minneapolis Police Department, and the officials in charges of said departments.

3.   This action also states common law battery, assault and negligence claims against Defendant Macias, in his individual and official capacities, and the City of Minneapolis for the actions of its agents and employees.

## FACTUAL BACKGROUND

4.   On Monday, May 25, 2020, Minneapolis Police Officers arrested and detained George "Perry" Floyd, an unarmed Black American, using excessive force and a reckless disregard for his life. Mr. Floyd tragically and unjustly died due to the injuries inflicted on him by the Minneapolis Police Officers, despite several witnesses who attempted to intervene and save Mr. Floyd's life.

5.   In honor of Mr. Floyd and in defense of Black lives everywhere, Minneapolis residents poured into the streets to protest the horrific and brutal killing that occurred on their streets. Despite the worsening COVID-19 pandemic due to the novel coronavirus, protestors gathered to grieve and demand action from Minneapolis leadership. Protestors made clear that an extrajudicial murder of a

2

Black man in broad daylight, in spite of onlookers' pleas, by officers under the color of law, who are paid using the public's tax dollars was wholly unacceptable.

6.   On Thursday, May 28, 2020, on-duty Minneapolis Police Officer Defendant Macias shot and injured the Plaintiff while she was serving as a Legal Observer with the National Lawyers Guild during a related protest. Officer Macias shot Plaintiff at close range with less-lethal ammunition, while plaintiff's hands were raised beside her head; her left wrist caught the ammunition in the air. Plaintiff was immediately treated on site by medics who urged her to seek emergency medical treatment at a hospital, despite the risk posed by COVID-19.

## PARTIES

7.   Plaintiff is a resident of Minnesota and lives in Minneapolis.

8.   Defendant Officer Oscar Macias, badge #4319, is the identified individual who committed the acts set forth below as an agent of Defendants City of Minneapolis. At all times relevant hereto, Macias was acting under color of state law. Defendant Macias is being sued in his personal capacity.

9.   Defendant City of Minneapolis is a municipality incorporated in the State of Minnesota, and through its agents, and employees, is responsible for the actions that are the subject of this lawsuit.

## FACTS

10.  On the evening of Thursday, May 28, 2020, Plaintiff was serving as a trained National Lawyers Guild Legal Observer at a protest that started near the Hennepin

3

County Government Center. Plaintiff arrived around 6:00pm and was wearing the

neon hat utilized by Legal Observers.



11.   Plaintiff eventually paired up with two other Legal Observers.

12.   At approximately 8:55pm, Plaintiff and partners witnessed a group of

approximately nine police officers on bicycles pull off into a parking lot on

Marquette Avenue and South 3rd Street and change gear. Defendant Macias is

believed to have been among the nine officers.



13.     The officers put on gas masks and face shields and retrieved guns from their bags.



14. Plaintiff and her partners observed and documented the officers, who were aware of the Legal Observer's presence, as there were few others around.

15. After gearing up, the officers biked off on Nicollet Mall heading towards South 4th Street.

16. Plaintiff and her partners also moved on and soon encountered a fellow law-student, who reported that police were antagonizing peaceful protestors about a block away.

17. Plaintiff and her partners moved quickly in order to document the situation. They approached the intersection of Hennepin Avenue and 4th Street South at approximately 9:02pm. As they approached, their eyes were stung by a chemical irritant suspended in the air.

18. Plaintiff and her partners turned onto Hennepin Ave, off of 4th Street South, near Gay 90's nightclub. On that block, police were gathered in riot gear in the Allied Parking lot behind the Minneapolis Police 4th Precinct station.



19.   Police were assembled behind metal barriers that had been erected behind the

existing parking lot guardrail.

20.   Plaintiff and her partner counted over 30 police officers - including some mounted

on bicycles. They believe these were the same officers they had just observed, who

knew that the Legal Observers were documenting them.

21. The officers were facing off with peaceful protestors in the street. Plaintiff and her partners moved to observe and document the encounter on the sidewalk, perpendicular to both groups.

22. Plaintiff and her partners stayed on the sidewalk and behind the gates in order to observe.

23. Plaintiff and her partners witnessed peaceful protestors chanting to a drum, saying "George Floyd" again and again. Some were also shouting at police.

24. At approximately 9:04pm, Plaintiff witnessed what appeared to be a single plastic water bottle thrown at police on the far end of the block, far away from where she stood.

25. An unidentified officer on that end of the block fired what is believed to be "less lethal" ammunition in response.

26. Plaintiff was located a long distance from the location where the plastic bottle had been thrown, and there were hundreds of people between Plaintiff and that location. Plaintiff remained on the sidewalk, and behind both the guardrail and gates which separated from protesters in the street. She continued observing from the side.

27. Defendant Macias, wearing badge #4319, who was standing near to the group of Legal Observers, began to shift his feet quickly and aimed his weapon at the crowd.

8



28.   Defendant Macias continued jockeying around with his gun propped on his

shoulder.

29.   Defendant Macias then aimed is gun at Plaintiff and her partner Legal Observers at

the side of the protest.

30. Although Plaintiff normally avoids any actions that could indicate any participation in protests where she is serving as a Legal Observer, she felt compelled to say in a loud voice, "Hey, now," as Defendant Macias was actually aiming his gun at her group of observers.

31. Plaintiff raised her hands up to signal peace and nonviolence in response. Plaintiff was holding up a notepad in one hand and her phone in the other, alongside her head.

32. At approximately 9:05pm, Plaintiff heard a loud shot and felt excruciating pain—her left wrist had been hit by a rubber bullet at close range.

33. A street medic approached Plaintiff and led her around the corner onto North 4th Street to treat her wound. Another medic in scrubs joined there. They attended to the wound until another round of chemical irritants were deployed and made it impossible to stay—Plaintiff's treatment was interrupted by the use of chemical irritants.

34. The medics told Plaintiff she might have a wrist fracture from the impact, and that she should go to the hospital quickly.

35. Plaintiff fled the scene, shaking and sobbing each time she heard another shot.

36. Plaintiff was bleeding and in terrible pain, both in her wrist and in her eyes, which were stinging from two rounds of chemical irritant exposure.

37. Plaintiff called her husband, who found her at approximately 9:25pm on the street alone, bleeding, sobbing, and terrified.



38.    Plaintiff's husband drove her to the Fairview Hospital Emergency Room on the
       East Bank of the University of Minnesota campus, but he was not allowed to
       accompany Plaintiff because of COVID-19.

39.    Plaintiff had to expose herself to a hospital setting in order to make sure her wrist
       was not broken by Defendant Macias' assault.

40.    At the hospital, Plaintiff was treated and told that she would need an X-ray,
       because the swelling made it impossible to tell if the wrist was fractured with a
       physical examination.



41.     Plaintiff was made to expose herself in the Emergency Room for nearly two

        hours.

42.     Plaintiff's X-ray looked "good," although the doctor said there was a chance a

        fracture could not be seen because of the intense swelling. Plaintiff was given a

        sling to wear and taught how to bandage the wound to reduce the risk of infection.



43.  Plaintiff continued to have trouble sleeping, as she felt agitated and generally

      uneasy for several months after the incident. Plaintiff felt startled and jumped

      when hearing any noise that could remotely resemble a gunshot. She was afraid to

      attend or observe any other protests for an extended time.

14

05.31.20



05.30.20



44.   On Monday, June 1, Plaintiff started a new full-time legal internship and had
      difficulty typing and performing tasks the job required.



45.   Also on Monday, June 1, Plaintiff and her husband tried to find first aid materials
      to keep Plaintiff's wound clean. The doctors had given them samples of bacitracin,
      gauze, and tape, but they had since run out. However, the two pharmacies closest
      to their house were both closed because of the brutal murder of Mr. Floyd and the
      consequential uprising.

91





17





46.   On Wednesday, June 10, Plaintiff had a telehealth appointment with Dr. Bruce

Anderson with Boynton Health. Dr. Anderson expressed concern that the

hematoma on Plaintiff's might become infected. He also instructed Plaintiff to get

another X-ray, because of Plaintiff's limited wrist mobility and extensive bruising.



47.   On Saturday, June 13, Plaintiff filed a formal complaint with the Office of Police

Conduct Review. Plaintiff had difficulty revisiting the incident and cried a lot

when recalling the details.

48. On Wednesday, June 17, Plaintiff visited Tria Orthopedics and was treated by Dr. Jennifer Wozniczka. Dr Wozniczka performed a physical examination, and treated Plaintiff with a cortisone shot to help with the pain and limited mobility, and arranged a second x-ray. Based on those images, Dr. Wozniczka confirmed that Plaintiff's wrist was thankfully not fractured, but told Plaintiff she would need physical therapy or surgery to regain mobility fully.

49. On Wednesday, June 24, Plaintiff again visited Tria Orthopedics and had a physical therapy session. The therapist taught Plaintiff exercises and self-massage techniques to help Plaintiff rehabilitate her wrist and regain mobility.

50. On Monday, July 6, as Plaintiff was still experiencing sleeplessness, agitation, and persistent feelings of fear and doom, Plaintiff's husband urged her to seek professional mental therapy. Plaintiff continued therapy for several months where she was diagnosed with PTSD.

51. As a result of the acts of Defendants, Plaintiff has suffered extensive damages, including but not limited to severe and permanent pain and suffering, disability, disfigurement, severe mental and emotional distress, humiliation and embarrassment, past and future medical treatment expenses, and past and future economic loss, thereby resulting in damages in excess of $75,000.

## CAUSES OF ACTION

### Count I: 42 U.S.C. § 1983 – Violation of First Amendment Rights
### to Freedom of Speech and Assembly

52.   Plaintiff restates and realleges all previous paragraphs of this Complaint.

53.   Plaintiff was lawfully exercising her First Amendment rights to free speech and the
      right to peacefully assemble.

54.   Plaintiff was performing a public service by observing matters of profound public
      concern, including the protests after Mr. Floyd's murder and the agressive
      response by the police towards peaceful protestors, and in the process exercising
      her own rights and attempting to protect the rights of others under the First
      Amendment..

55.   Defendant Macias used excessive force against Plaintiff to prevent her from
      observing important matters of public concern.

56.   The excessive force used against Plaintiff, as a Legal Observer, violated her right
      to engage in constitutionally protected activities.

57.   Defendants acted under color of law.

58.   Defendants acted with deliberate indifference to the constitutional rights of the
      Plaintiff.

59.   Plaintiff suffered serious physical injury as a direct result of Defendants. violations
      of her First Amendment rights.

60.     The Defendants' actions in this case were part of the City of Minneapolis' police

        department's custom, policy and practice of using excessive and brutal force

        against persons participating, attending or observing political demonstrations, and

        Defendant City of Minneapolis were deliberately indifferent to Defendants'

        violations of the constitutional rights of Plaintiff and others.

61.     As a result of said violations of her constitutional rights, Plaintiff suffered the

        damages described in paragraph 51 of this Complaint.

### Count II: 42 U.S.C. § 1983 – First Amendment Retaliation

62.     Plaintiff restates and realleges all previous paragraphs of this Complaint.

63.     Plaintiff engaged in constitutionally protected acts of freedom of speech and the

        right to assemble by observing public demonstrations.

64.     Defendants retaliated against Plaintiff and other Legal Observers by use of

        excessive force in response to the exercise of their constitutional rights.

65.     Defendants lacked probable cause to or any legal justification to use such force

        against Plaintiff.

66.     Plaintiff's constitutional rights were violated when Defendant Macias deliberately

        fired a projectile at Plaintiff that seriously injured Plaintiff's left wrist.

67.     Defendants' use of excessive force, including the shooting of less-lethal projectiles

        and dispersal of chemical irritants, would deter any person from continuing to

        exercise their First Amendment rights.

68.     These acts did in fact deter the Plaintiff from exercising her constitutional rights.

69.    Defendants acted under color of law.

70.    Defendants acted with reckless indifference to the federally protected rights of Plaintiff.

71.    Defendant City of Minneapolis was deliberately indifferent to Defendants' violations of the constitutional rights of Plaintiff.

72.    The Defendants' actions in this case were part of the City of Minneapolis' police department's custom, policy and practice of using excessive and brutal force against persons in retaliation for participating, attending or observing political demonstrations, particularly but not limited to protests against brutality by Minneapolis police officers.

73.    As a result of said violations of her constitutional rights, Plaintiff suffered the damages described in paragraph 51 of this Complaint.

### Count III: 42 U.S.C. § 1983 – Fourth Amendment Unlawful Seizure And Excessive Force

74.    Plaintiff restates and realleges all previous paragraphs of this Complaint.

75.    Plaintiff was seized by Defendant Macias in violation of her rights under the Fourth Amendment to be free from unreasonable seizures through the use of excessive force when the firing of ammunition at her and thereby terminated her freedom of movement and caused her to suffer serious injury.

76.    Plaintiff was seized by Defendants through chemical irritants terminated her freedom of movement and access to medical treatment.

77.   Defendants committed these acts without warning and, as a result, Defendants'

acts were objectively unreasonable and constituted unlawful seizure and excessive

force.

78.   Plaintiff did not pose a threat to any of Defendant Macias other officers or agents

or any other person.

79.   Defendants acted under color of law.

80.   Defendants willfully engaged in the unconstitutional conduct.

81.   The Defendants' actions in this case were part of the City of Minneapolis' police

department's custom, policy and practice of using excessive and brutal force,

including but not limited to persons participating, attending or observing political

demonstrations.

82.    As a result of said violations of her constitutional rights, Plaintiff suffered the

damages described in paragraph 51 of this Complaint.

**Count  IV: 42 U.S.C. § 1983 – Fourteenth Amendment Violation
of Substantive Due Process Rights.**

83.   Plaintiff restates and realleges all previous paragraphs of this Complaint.

84.   Defendants violated Plaintiff's rights to Substantive Due Process under the

Fourteenth Amendment by authorizing, ordering, encouraging and carrying out

outrageous actions that violated the rights of citizens attempting to exercise their

First Amendment rights, including but not limited to the above-described

violations of Plaintiff's rights.

85.   There existed no need to use force against Plaintiff, who was peacefully assembled and engaged in completely lawful and non-threatening activity.

86.   Plaintiff's injuries were extreme and could have been much worse or even deadly.

87.   Defendant Macias made no effort to temper or limit the amount of force.

88.   There did not exist any security issue or threat posed by Plaintiff's observing.

89.   Plaintiff was not actively resisting; Plaintiff raised her hands up to signal nonviolence.

90.   Defendants acted under color of law.

91.   Defendants willfully engaged in the unconstitutional conduct.

92.   As a result of said violations of her constitutional rights, Plaintiff suffered the damages described in paragraph 51 of this Complaint.

**Count V: Violation of 42 U.S.C. § 1983 - Failure to Train and Supervise**.

93.   Plaintiff restates and realleges all previous paragraphs of this Complaint.

94.   Defendant City of Minneapolis deprived Plaintiff of her constitutional rights by failing to properly train and supervise police officers, including Defendant Macias, in a manner necessary and reasonable to protect the constitutional rights of citizens. The City of Minneapolis and its police department thereby implicitly authorized Defendant Macias to violate Plaintiff's constitutional rights.

95.   Upon information and belief, Defendant Macias and other Minneapolis police officers did not receive necessary training to protect the rights of citizens engaged

in free speech and peaceable assembly protected by the First Amendment, or avoid engaging in excessive force.

96.     Upon information and belief, the City of Minneapolis and higher ranking officers specifically failed to provide necessary training and supervision to Defendant Macias to ensure that he respected First Amendment rights and did not engage in excessive force.  At least seven citizen complaints were filed against Defendant Macias prior to the incident giving rise to this lawsuit during his approximately seven years on the police force. Upon information and belief, the City of Minneapolis and supervising officers failed to take corrective action in response to Macias' known pattern of violations of citizens' rights.

97.     Upon information and belief, Minneapolis police used excessive force against numerous other persons at demonstrations including but not limited to "less lethal" ammunition and chemicals, without any cause or justification, thereby evincing a lack of training and supervision.

98.     As a result of said violations of her constitutional rights, Plaintiff suffered the damages described in paragraph 51 of this Complaint.

**Count VI: Violation of 42 U.S.C. § 1983 - Unlawful Policy, Practice and Custom**.

99.     Plaintiff restates and realleges all previous paragraphs of this Complaint

100.    Defendant City of Minneapolis violated Plaintiff's constitutional rights by maintaining unlawful and constitutional policies, customs or practices that failed to

protect the rights - or encourage violations of the rights of citizens to engage in free speech, peaceful assembly, and to be free from excessive force.

101.    It was the policy of Defendants to perpetrate massive violations of rights of citizens engaged in free speech and peaceful assembly in response to the murder of George Floyd by Minneapolis police officers.

102.    Upon information and belief, Minneapolis police used excessive force against numerous other persons at demonstrations including but not limited to "less lethal" ammunition and chemicals, without any cause or justification, thereby evincing a policy and custom of such violations.

103.    It has been long-standing policy, custom and practice of the Minneapolis police department to engage in excessive force.

104.    With deliberate indifference to the rights of its residents, The City of Minneapolis permitted and promoted a custom, pattern and practice on the part of its officers, including Defendant Macias, of the improper use of force.

105.    The City and its policymakers regularly failed to discipline Defendant Macias and numerous officers for improper use of force.

106.    As a result of said violations of her constitutional rights, Plaintiff suffered the damages described in paragraph 51 of this Complaint.

### Count VII: State Law Claim - Assault

107.    Plaintiff restates and realleges all previous paragraphs of this Complaint.

108.    Defendant Macias used excessive, unprovoked, and unreasonable force to prevent

         Plaintiff from exercising her constitutional rights.

109.    Defendant Macias intended to cause imminent harmful and offensive contact.

110.    Defendant Macias' actions were unlawful and unjustified.

111.    As a direct result of the assault by Defendant Macias, in the course of his

         employment by the City of Minneapolis, Plaintiff suffered the damages described

         in paragraph 61 of this Complaint.

### Count VIII: State Law Claim - Battery

112.    Plaintiff restates and realleges all previous paragraphs of this Complaint.

113.    Defendant Macias intentionally caused harmful and offensive contact with

         Plaintiff by using excessive force to prevent Plaintiff from exercising her

         constitutional rights.

114.    Defendants fired a less-than lethal rubber bullet, seriously injuring Plaintiff's left

         wrist and arm.

115.    As a direct result of the battery by Defendant Macias, in the course of his

         employment by the City of Minneapolis, Plaintiff suffered the damages described

         in paragraph 61 of this Complaint.

### Count IX: State Law Claim - Negligence

116.    Plaintiff restates and realleges all previous paragraphs of this Complaint.

117.   Defendants, individually or through their agents and employees, by their above-described actions, breached their duty to exercise a reasonable standard of care in their duty to avoid unjustified and unnecessary harm to Plaintiff.

118.   Defendants acts and omissions with respect to Plaintiff were not only negligent, cut also willfully and grossly negligent.

119.   As a direct result of Defendants' negligence, Plaintiff suffered the damages described in paragraph 61 of this Complaint.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Hillary Richard prays for judgment as follows:

1.   Enter judgment in favor of Plaintiffs and against Defendants.

2.   Enter a declaratory judgment that Defendants' conduct violated the First, Fourth, and Fourteenth Amendments of the U.S. Constitution.

3.   Award judgment against the Defendants, and each of them jointly and severally, in an amount that compensates Plaintiffs for all of her injuries, including but not limited to compensatory and pecuniary damages.

4.   Award punitive damages against individually named Defendants.

5.   Award Plaintiff all her costs and disbursements herein, and prejudgment interest.

6.   Award Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

7.    Award Plaintiff such other and further relief as the Court deems equitable,

just, and proper.


Date: March 21, 2022                    LAW OFFICE OF JORDAN S. KUSHNER

                                        By:  s/Jordan S. Kushner
                                             Jordan S. Kushner, ID 219307
                                             Attorney for Plaintiffs
                                             Center Village Building, Suite 2446
                                             431 South 7th Street
                                             Minneapolis, MN  55415
                                             (612) 288-0545
                                             JSKushner@gmail.com